1
2
3
4
5            IN THE UNITED STATES DISTRICT COURT

6               FOR THE DISTRICT OF ARIZONA

7

8    Edmond Gasaway,                    )    No. CV-13-00905-TUC-RCC (CRP)
                                        )
9               Petitioner,             )    **REPORT AND**
                                        )    **RECOMMENDATION**
10   vs.                                )
                                        )
11                                      )
     Louis W. Winn, Jr., Warden,        )
12                                      )
                Respondent.             )
13                                      )
     _____)

14

15          Petitioner Edmond Gasaway,[1] proceeding pro se and confined in the Federal

16   Correctional Institution-Tucson, has filed a Petition Under 28 U.S.C. § 2241 for a Writ of

17   Habeas Corpus by a Person in Federal Custody.  (Doc. 1, Pet.).  Respondent has filed a

18   Return and Answer to the Petition Under 28 U.S.C. § 2241for a Writ of Habeas Corpus and

19   Motion to Dismiss Petition.  (Doc. 17, Answer).  Petitioner has filed a Response to

20   Government's Motion to Dismiss Petitioner's Writ of Habeas Corpus.  (Doc. 20, Reply).

21          Petitioner is presently serving a 387-month sentence as a result of his conviction on

22   conspiracy and firearms offenses obtained in the Eastern District of Texas.  (Answer at 2 &

23   Doc. 17-1, Ex. A, Smithers Decl., Attach. 1, Judgment in a Criminal Case).[2]  Petitioner was

24   _____

25          [1] The docket sheet shows Petitioner's first name as "Edmond."  Petitioner has signed
26   his first name as "Edmon" on the Petition and other papers filed in this case.

27          [2] Respondent has provided the Declaration of Catherine Smithers, Legal Assistant,
     Federal Correctional Institution, Phoenix, Arizona (Doc. 17-1, Ex. A), who has verified as
28   custodian of records true copies of certain records submitted as Attachments with

1  incarcerated at the Federal Correctional Institution at Ray Brook, New York ("FCI Ray
2  Brook") from January 27, 2011, to March 15, 2013.  (Answer at 2; Doc. 17-1, Attach. 3,
3  Inmate History).

4        This matter has been referred to the Magistrate Judge for a Report and
5  Recommendation.  (Doc. 8, Order at 3).  For the reasons that follow. the Magistrate Judge
6  recommends that the Petition for Writ of Habeas Corpus should be denied.

7  **I.      The Petition for Writ of Habeas Corpus**

8        Petitioner asserts as grounds in the Petition that his due process rights to a fair and
9  impartial prison discipline proceeding were violated by the Discipline Hearing Officer
10 ("DHO").  (Pet. at 3-4).  Petitioner contends that the DHO relied on evidence that did not
11 support any disciplinary charge, that there is no evidence to support the DHO's findings, and
12 that the DHO was not an impartial decision-maker.  (*Id*.).  Petitioner seeks to have the
13 discipline Incident Report removed from his prison record.  (*Id*. at 4).

14       Respondent argues in the Answer that the relief Petitioner has requested, that is,
15 removal of the Incident Report from his prison record, is not available in this habeas corpus
16 action and the Petition should be dismissed.  (Answer at 6).  Respondent also argues that
17 Petitioner has not shown a violation of constitutional rights in the disciplinary action and the
18 Petition should be denied.  (*Id*.). Respondent does not challenge Petitioner's claim that he
19 exhausted his administrative remedies regarding his allegations.  (*Id*. at 2).

20 **II.     Background**

21       **A.      The Inmate Discipline Program**

22       The Bureau of Prisons ("BOP") inmate discipline program identifies certain acts that
23 are prohibited at the prison, classifies the severity of the prohibited acts as Low, Moderate,
24 High and Greatest, and identifies sanctions to be imposed when an inmate is found to have
25 committed a prohibited act.  28 C.F.R. §§ 541.1, 541.3 & Tables 1-2.  The discipline process
26 generally starts when a staff member issues an Incident Report to an inmate based on the

27 _____

28 Respondent's Answer.

staff member's observation or reasonable belief that the inmate has committed a prohibited act. 28 C.F.R. § 541.5. The Incident Report describes the incident and generally is delivered to the inmate within 24 hours of the staff member becoming aware of the inmate's involvement in the incident. *Id*. Following completion of a staff investigation, the Unit Discipline Committee ("UDC") reviews the Incident Report. 28 C.F.R. § 541.7. The inmate may appear before the UDC and may make a statement and present documentary evidence in his behalf. 28 C.F.R. § 541.7(d) & (e). The UDC may find that the inmate committed the prohibited act, it may find that the inmate did not commit the prohibited act, or it may refer the matter to the DHO depending on the seriousness of the prohibited act. 28 C.F.R. § 541.7(a).

If the Incident Report is referred, the DHO conducts a hearing at which the inmate may appear at the DHO's discretion. 28 C.F.R. § 541.8(e)(1). After the hearing, the DHO may find that the inmate committed the prohibited act charged or a similar prohibited act based on the Incident Report, may find that the inmate did not commit the prohibited act, or may refer the incident for further investigation, review and disposition. 28 C.F.R. § 541.8(a). The DHO must be an impartial decision maker who was not involved in the alleged incident as a victim, witness or investigator or who otherwise was not significantly involved in the incident. 28 C.F.R. § 541.8(b). The DHO's findings must be based on "at least some facts and if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO provides the inmate with a written copy of the decision. The DHO's decision must include findings on the following issues: (1) whether the inmate was advised of his rights; (2) the evidence relied upon; (3) the DHO's decision; (4) the sanction imposed; and (5) the reason for the sanction. 28 C.F.R. § 541.8(h). The inmate may appeal the DHO's decision through the Administrative Remedy Program. 28 C.F.R. § 541.8(i).

## B. Factual Background

On January 22, 2013, prison staff at FCI Ray Brook notified Petitioner to "cuff up" because he would be receiving a cell mate. (Doc. 17-1, Attach. 4, Incident Report #2400126). Petitioner allegedly answered that he would not allow anyone to move into his

Case 4:13-cv-00905-RCC   Document 27   Filed 05/25/16   Page 4 of 8

cell and that if anyone was placed in his cell he would "beat there [sic] ass." (*Id.*).  The reporting prison staff member that same date charged Petitioner in an Incident Report with a Code 203 prohibited act, threatening another with bodily harm. (*Id.*).  The Incident Report was delivered to Petitioner at 1:40 p.m. on January 22, 2013.  (*Id.*).

A Lieutenant at FCI Ray Brook assigned to investigate the incident advised Petitioner of his right to remain silent and afforded Petitioner with an opportunity to make a statement. (Doc. 17-1, Attach. 4 at 2). Petitioner allegedly stated "no comment." (*Id.*).  Petitioner did not request any witnesses. (*Id.*).  The Lieutenant concluded based on the Incident Report that the charge  was justified and referred the matter to the UDC for further disposition.  (*Id.*).

Petitioner appeared before the UDC on January 25, 2013. (Doc. 17-1, Attach. 4 at 1). Petitioner commented that the incident did not happen and the report was false. (*Id.*).  Based on the officer's written report, the investigation, and Petitioner's statement, the UDC determined that the matter warranted further hearing and referred the charge to the DHO. (*Id.*).

On January 25, 2013, Petitioner was given Notice of a Hearing before the DHO. (Doc. 17-1, Attach. 5, Notice of Discipline Hearing before the DHO).  Petitioner requested that a staff representative be present and that two witnesses be permitted to testify that he did not say the alleged statements. (*Id.*).  Petitioner was given notice of his rights at the discipline hearing. (Doc. 17-1, Attach. 6, Inmate Rights at Discipline Hearing).

Petitioner appeared before the DHO on February 12, 2013. (Doc. 17-1, Attach. 7, DHO Report for Incident Report #2400126).  Petitioner's requested staff representative appeared at the hearing. (*Id.* at 1). Petitioner denied the charge and said he never threatened anyone or refused a cell mate. (*Id.*).  Petitioner's two witnesses appeared and testified that Petitioner did not threaten anyone. (*Id.* at 1-2). The DHO found that the evidence supported a lesser prohibited act, a Code 307 violation, refusing an order or instruction of a staff member, instead of the charged Code 203 prohibited act of threatening another with bodily harm. (*Id.* at 2). The DHO stated as the basis for the decision the reporting officer's written statement that Petitioner had refused to allow another inmate in his cell.  (*Id.*). The DHO

1  considered Petitioner's statement denying the charge and the testimony of the two witnesses.

2  (*Id*.).  The DHO relied on the "greater weight of evidence" of the statement of the reporting

3  officer and specifically that Petitioner had refused to cuff up and receive a cell mate when

4  instructed to do so.   (*Id*.).  The DHO sanctioned Petitioner by imposing 15 days of

5  disciplinary segregation.  (*Id*.).  The DHO set forth his reasons for the action taken and

6  notified Petitioner of his appeal rights.  (*Id*. at 3).  The DHO report was delivered to

7  Petitioner on February 19, 2013.  (*Id*. at 3).

8  **III.   Discussion**

9      The Court first considers Respondent's argument that the Petition should be dismissed

10  because Petitioner has not alleged that the discipline imposed, 15 days of disciplinary

11  segregation, affects the duration of his sentence.  (Answer at 7).  Petitioner contends in his

12  Reply that his custody classification and scoring were altered as a result of the DHO's failure

13  to provide adequate procedural protections.  Petitioner specifically asserts that his "prison

14  record has been altered causing him to be subjected to much harsher prison conditions [than]

15  he is actually qualified for, meaning, his custody score has been altered by the information

16  now in his prison[] record, [affecting] the execution of his sentence and conditions and

17  manner of his confinement of sentence."  (Doc. 20 at 4 & 5-6).  Petitioner seeks to have the

18  discipline Incident Report removed from his record.

19      Habeas corpus jurisdiction is available under § 2241 "for a prisoner's claims that he

20  has been subjected to greater restrictions of his liberty, such as disciplinary segregation,

21  without due process of law."  *See Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989).

22   "[A] claim challenging prison disciplinary proceedings is cognizable" under the federal

23  habeas statute "only if it will 'necessarily spell speedier release' from custody, meaning that

24  the relief sought will either terminate custody, accelerate the future date of release from

25  custody, or reduce the level of custody."  *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir.

26  2015) (citing *inter alia Skinner v. Switzer*, 562 U.S. 521 (2011)).  This may include a

27  petitioner's claim seeking "expungement of a disciplinary finding from his record."  *Bostic*,

28  884 F.2d at 1269.  Here, Petitioner received disciplinary segregation and seeks to have the

1   Incident Report removed from his record because it affects his classification. The Court will
2   assume that habeas jurisdiction exists. *Id.*

3         To satisfy the basic requirements of due process in the context of prison discipline
4   proceedings, prison officials need only provide an inmate with: (1) a written notice of the
5   charge at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present
6   documentary evidence in his defense when such action will not be unduly hazardous to
7   institutional safety or correctional goals; and, (3) a written statement by the factfinders as to
8   the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418
9   U.S. 539, 565-66 (1974).

10        Due process further requires only that disciplinary findings be supported by "some
11  evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445,
12  454-55 (1985). This standard is met when "there is any evidence in the record that could
13  support the conclusion reached by the disciplinary board." *Id.*, at 455-56. While this is a
14  "minimally stringent" standard, "there must be some indicia of reliability of the information
15  that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th
16  Cir. 1987). The "some evidence standard" does not require the court to examine the entire
17  disciplinary record, independently assess the credibility of witnesses, or reweigh the
18  evidence. *Hill*, 472 U.S. at 455.

19        Petitioner does not contend he was not given the required notice, that he was denied
20  the opportunity to call witnesses, or that he was not provided with a written statement by the
21  DHO regarding the evidence relied upon and the reasons for the discipline action. (Doc. 20
22  at 5). Petitioner also does not contend that the DHO was involved in the alleged incident as
23  a victim, witness, investigator or otherwise. Rather, Petitioner contends that the DHO
24  demonstrated bias based on the following reasons. Petitioner argues that the DHO gave
25  greater weight to the staff member's statement instead of to Petitioner's statement and
26  witness testimony. Petitioner asserts that the DHO's decision to find him guilty was
27  unreasonable and biased because there was no evidence to support the charged offense.
28  Petitioner contends that it is not stated in the reporting officer's report that the officer notified

1   or told Petitioner to cuff up and Petitioner refused.  (Pet. at 4; Doc. 20 at 3).  Petitioner

2   contends the DHO "went above and beyond the call of duty to punish Petitioner" because

3   Petitioner has first-hand knowledge that the DHO, Lieutenant Bennett (the investigating

4   officer) and the reporting officer gathered in the office prior to Petitioner's hearing and the

5   calling of his witnesses.  (Doc. 20 at 4).  This latter contention, which amounts to

6   speculation, as well as the others, do not support a finding of bias on the part of the DHO.

7         The record shows that the officer stated in the Incident Report that he "notified Inmate

8   Gasaway ... to cuff up that he would be receiving a cell mate.  Inmate Gasaway stated that

9   he would not allow anyone to move in the cell with him and that if I put anyone in there with

10  him he would beat there [sic] ass." (Doc. 17-1, Attach. 4 at 1).  Petitioner stated at the DHO

11  hearing that he did not threaten anyone or refuse a cell mate. Petitioner's two witnesses

12  testified at the hearing that Petitioner did not threaten anyone. Petitioner's statement and his

13  witness testimony conflicted with the report of the incident provided by the staff member.

14  The DHO's finding that Petitioner refused to cuff up and receive a cell mate when instructed

15  to do so, that is, refused an order or instruction of a staff member, was based on the staff

16  member's report of the incident.  This evidence is sufficient to meet the standards of due

17  process. *See Hill*, 472 U.S. at 456 ("the evidence before the disciplinary board was sufficient

18  to meet the requirements imposed by the Due Process Clause. The disciplinary board

19  received evidence in the form of testimony from the prison guard and copies of his written

20  report."); *Bostic*, 884 F.2d at 1271 (regarding a prison disciplinary determination, "[t]he

21  reporting officer's testimony constituted sufficient evidence to support the finding of

22  guilty.").  The DHO's determination adverse to Petitioner does not constitute a valid basis

23  for bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("opinions formed ... on the

24  basis of facts introduced or events occurring in the course of the current proceedings ... do

25  not constitute a basis for a bias or partiality motion unless they display a deep-seated

26  favoritism or antagonism that would make fair judgment impossible.").

27         The court does not assess the credibility of the witnesses or reweigh the evidence.

28  Petitioner's discipline determination is supported by some evidence and the requirements of

1   due process were satisfied.

2   **IV.    Recommendation**

3          For the foregoing reasons, the Magistrate Judge recommends that the District Court

4   after its independent review deny the Petition Under 28 U.S.C. § 2241 For A Writ Of Habeas

5   Corpus By A Person In Federal Custody (Doc. 1).

6          Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure

7   and LRCiv 7.2(e) of the Rules of Practice of the U.S. District Court for the District of

8   Arizona, any party may serve and file written objections within **Fourteen (14) Days** after

9   being served with a copy of this Report and Recommendation.  A party may respond to

10  another party's objections within **Fourteen (14) Days** after being served with a copy.

11  Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from

12  the District Court to do so.  If objections are filed, the parties should use the following case

13  number: **CV-13-00905-TUC-RCC**.

14         Failure to file timely objections to any factual or legal determination of the Magistrate

15  Judge may be deemed a waiver of the party's right to de novo review of the issues.  *See*

16  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

17         DATED this 25th day of May, 2016.

18

19

20

21  **CHARLES R. PYLE**

22  **United States Magistrate Judge**

23

24

25

26

27

28